Matter of Rapaglia v New York City Tr. Auth. (2020 NY Slip Op 00194)





Matter of Rapaglia v New York City Tr. Auth.


2020 NY Slip Op 00194


Decided on January 9, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: January 9, 2020

528510

[*1]In the Matter of the Claim of Robert G. Rapaglia, Appellant,
v
New York City Transit Authority, Respondent. Workers' Compensation Board, Respondent.

Calendar Date: December 18, 2019

Before: Garry, P.J., Egan Jr., Aarons, Pritzker and Colangelo, JJ.


Geoffrey Schotter, New York City, for appellant.
Foley, Smit, O'Boyle & Weisman, New York City (Michael P. Furdyna of counsel), for New York City Transit Authority, respondent.



Garry, P.J.
Appeal from a decision of the Workers' Compensation Board, filed August 8, 2018, which ruled, among other things, that claimant sustained a 60% loss of wage-earning capacity.
In 2015, claimant, a bus driver, filed a claim for workers' compensation benefits after he was assaulted while driving on August 11, 2015. His case was established for injuries to his face and neck, as well as for posttraumatic stress disorder (hereinafter PTSD) and major depression. Claimant received ongoing treatment and did not return to work and, in August 2016, his employment was terminated. In 2017, the parties were directed to produce medical evidence of permanency and degree of impairment and hearings were held at which claimant argued that he had a permanent total disability or, in the alternative, a total industrial disability. A Workers' Compensation Law Judge classified claimant with a permanent partial disability, calculated a 60% loss of wage-earning capacity and concluded that he did not have a total industrial disability. Upon review, the Workers' Compensation Board found that claimant had a permanent partial disability that was moderate to marked, and agreed that he had a 60% loss of wage-earning capacity. The Board concluded that his request for classification with a total industrial disability was premature. Claimant appeals.
We affirm. "[W]here, as here, a claimant sustains a permanent partial disability that is not amenable to a schedule award, the Board must determine the claimant's loss of wage-earning capacity in order to fix the duration of benefits" (Matter of Varrone v Coastal Envt. Group, 166 AD3d 1269, 1270 [2018] [internal quotation marks and citation omitted], lv denied 32 NY3d 917 [2019]; see Workers' Compensation Law § 15 [3] [w]; New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity § 9.3, at 47 [2012] [hereinafter the guidelines]). "To that end, chapter 9 of the [guidelines] sets forth the manner for determining the loss of wage-earning capacity for a claimant with a nonschedule permanent partial disability and provides that it is based on three types of input, namely, [the nature and degree of the] medical impairment, functional ability/loss and non-medical vocational factors" (Matter of Bloomingdale v Reale Constr. Co. Inc., 161 AD3d 1406, 1408 [2018] [internal quotation marks and citation omitted]; see New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity chs 9, 10, at 44-50 [2012]). "The first two inputs are medical in nature, while the third is non-medical and concerns [vocational] matters such as a claimant's education, skill, [training,] age and literacy" (Matter of Bloomingdale v Reale Constr. Co. Inc., 161 AD3d at 1408 [internal quotation marks and citations omitted]; see Matter of Villalobos v RNC Indus. LLC, 151 AD3d 1156, 1158 [2017]; Matter of Burgos v Citywide Cent. Ins. Program, 148 AD3d 1493, 1495 [2017], affd 30 NY3d 990 [2017]; New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity § 9.2, at 44-46 [2012]). In rating the severity of medical impairment due to causally-related PTSD or other psychiatric conditions, "the evaluation should include the impact of the psychiatric impairment on functional ability, including activities of daily living" (New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity table 17.3, at 119 [2012]). For established permanent psychiatric conditions, the Board should also consider "the impact of the psychiatric impairment on the claimant's ability to function in the workplace, including activities that are relevant to obtaining, performing and maintaining employment" (New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity § 9.2 [consideration 4], at 46 [2012]).
Claimant contends that the Board's finding that he sustained a 60% loss of wage-earning capacity was not supported and failed to adequately consider his obesity and his limited education and work experience. We do not agree. The employer's orthopedic consultant, Frank Hudak, offered uncontradicted testimony that claimant had a post-contusion sprain of the cervical spine that had reached maximum medical improvement.[FN1] Hudak classified him with a class 2 severity A rating to his cervical spine under table 11.1 of the guidelines, characterized by recurrent symptoms with no objective findings, muscle spasms or neurological findings. Hudak opined that, with regard to his physical injuries, he could return to work, including heavy work, but was otherwise limited by his morbid obesity in that his weight exceeded 500 pounds (see New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity table 11.1, at 51 [2012]).
With regard to claimant's causally-related psychiatric conditions, the experts agreed that he had reached maximum medical improvement but differed on the extent of his permanent disability. The Board largely credited Peter Sass, the employer's psychiatrist, who examined claimant five times over the course of 18 months and diagnosed him with PTSD and major depressive disorder. Although he did not perform standardized psychiatric tests, Sass opined that claimant had a permanent, partial mild psychiatric disability, based upon his examinations of him and, in part, in reliance on table 17.3 of the guidelines governing casually-related psychiatric conditions (see New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity table 17.3, at 119 [2012]). Sass concluded that, due to his ongoing psychiatric conditions, claimant was unable to operate a bus but could perform other work. Sass opined that the most significant cause of claimant's psychiatric problems was his untreated weight gain and that most of his depression was not causally related but, rather, calculated that between 67% and 75% of his current depression was attributable to his "very serious morbid obesity."
Claimant's treating psychologist, Christine Roufail, who has treated him since shortly after the accident, diagnosed him with depression, PTSD, anxiety and a pain disorder. Roufail opined that claimant had regressed and that, after his weekly therapy sessions had been reduced to biweekly in April 2017, he had gained over 150 pounds, and concluded, based upon a permanency evaluation, that he had a permanent total disability. Roufail, unlike Sass, submitted a C-4.3 form assessing the severity of claimant's impairments and their potential impact on his ability to function in the workplace, indicating that he was severely limited in many but not all tasks (see New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity § 9.2, at 44; consideration 4, at 46 [2012]).[FN2] Claimant, age 48, testified that he worked as a bus driver for 22 years, has no other training and his prior work experience was in landscaping and sanitation. He has no hobbies, has not driven in over two years and uses a computer at home, and his application for reclassification for other work was denied by the employer who, in April 2016, deemed him medically unfit for placement in an alternate job. Given that the Board is "vested with the authority to resolve conflicting medical opinions" (Matter of Maloney v Wende Corr. Facility, 157 AD3d 1155, 1156 [2018]), we discern no basis upon which to disturb its conclusion that the uncontradicted orthopedic and credible psychiatric medical evidence supports a finding of a causally-related permanent disability that was partial, to a marked or moderate degree, but did not support a finding of a permanent total disability. Further, the Board's finding that there is "no persuasive or credible medical evidence" to support the conclusion that "claimant's overall medical condition renders him incapable of gainful employment" is also supported by substantial evidence, as is its assessment that claimant sustained a 60% loss of wage-earning capacity. Consistent with the guidelines, the Board considered claimant's causally-related medical impairments and residual functional abilities. It also considered the relevant vocational factors, including claimant's age, English proficiency and language skills, which it viewed as mitigating factors, and his high school education, skills and work experience, which it viewed as neutral factors (see New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity ch 9, at 44-49 [2012]). While the experts agreed that claimant could not return to driving a bus, we cannot conclude that the Board erred in crediting the testimony that his medical and functional limitations caused by this work-related accident did not render him incapable of other work, or in its ultimate determination that, as a consequence, his wage-earning capacity was reduced by 60% (see Matter of Roman v Manhattan & Bronx Surface Tr. Operating Auth., 139 AD3d 1304, 1305-1306 [2016]; compare Matter of Golovashchenko v Asar Intl. Corp., 153 AD3d 1475, 1477 [2017]).
With regard to the testimony that claimant's morbid obesity and weight gain affected his psychiatric conditions and physical impairment, he never requested that his claim for benefits be amended to include this as a causally-related or consequential condition, his claim was never so amended, and he did not raise this issue on his application for Board review;[FN3] thus, his current contention that it was causally related is unpreserved (see Matter of Tenecela v Vrapo Constr., 146 AD3d 1217, 1218 [2017]). Moreover, while Roufail testified that claimant gained approximately 150 pounds after his therapy sessions were reduced, she did not testify that claimant's obesity was causally related, and Sass testified that the weight gain was not causally related. Likewise, the testimony that claimant's mobility and activities are greatly limited, he requires help with activities of daily living and he has not driven a car in two years and is unable to do so were not shown to be a result of this accident. Inasmuch as loss of wage-earning capacity is designed to compensate permanently injured employees for lost earning power attributable to their causally-related and consequential physical or mental impairments — here, claimant's orthopedic and psychiatric conditions — his obesity was properly discounted in this calculation as not causally related (see New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity § 9.3, at 47 [2012]).
Claimant also argues that he should have been classified as having a total industrial disability, and that the Board erred in finding that this request was premature (see Workers' Compensation Law § 35 [2]). "[A] claimant who has a permanent partial disability may nonetheless be classified as totally industrially disabled where the limitations imposed by the work-related disability, coupled with other factors, such as limited educational background and work history, render the claimant incapable of gainful employment" (Matter of Tenecela v Vrapo Constr., 146 AD3d at 1218 [internal quotation marks and citations omitted]). The Board found that the issue was premature, as the hearing focused on whether claimant's permanent injuries were total or partial and the degree of causally-related impairment. Further, claimant's testimony only touched on factors relevant to this issue and did not reflect whether he had made any efforts to secure employment, and no reports from vocational experts were submitted assessing his suitability for any employment. Although the testimony on permanency could support a finding that claimant's combined causally-related and unrelated conditions, including morbid obesity and related complications, render him unable to work, we find no abuse of discretion in the Board's determination that further development of the record on this issue is required.
Egan Jr., Aarons, Pritzker and Colangelo, JJ., concur.
ORDERED that the decision is affirmed, without costs.



Footnotes

Footnote 1: Claimant was found to have waived the right to produce a permanency report or testimony regarding his orthopedic injuries.

Footnote 2: The 2012 guidelines are not clear as to whether a psychiatric impairment and functional assessment, like other medical assessments, should be recorded on a form C-4.3 (New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity § 9.2, at 44; consideration 4, at 46 [2012]).

Footnote 3: Claimant argued in his application for Board review that his obesity should be considered with regard to his request for classification as totally industrially disabled.