Matter of Castano v Westchester Community Coll. (2020 NY Slip Op 00196)





Matter of Castano v Westchester Community Coll.


2020 NY Slip Op 00196


Decided on January 9, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: January 9, 2020

528830

[*1]In the Matter of the Claim of Aurelio Castano, Appellant,
v
Westchester Community College, Respondent. Workers' Compensation Board, Respondent.

Calendar Date: December 17, 2019

Before: Lynch, J.P., Clark, Mulvey, Devine and Reynolds Fitzgerald, JJ.


John F. Clennan, Ronkonkoma, for appellant.
Jones Jones, LLC, New York City (David Secemski of counsel), for Westchester Community College, respondent.



Reynolds Fitzgerald, J.
Appeal from a decision of the Workers' Compensation Board, filed October 15, 2019, which ruled, among other things, that claimant sustained a 55% loss of wage-earning capacity.
In June 2013, claimant, a then 45-year-old technical assistant and part-time teacher for the employer, filed a claim for workers' compensation benefits based upon exposure to mold and chemicals at his workplace, and his claim subsequently was established for, among other things, mold exposure, reactive airway disease and fibromyalgia. Following claimant's testimony and the depositions of numerous medical professionals, a Workers' Compensation Law Judge (hereinafter WCLJ) classified claimant with a permanent partial disability and a 78% loss of wage-earning capacity — noting that claimant was capable of performing sedentary work. Upon review, a panel of the Workers' Compensation Board modified the WCLJ's decision, finding that claimant had sustained a 55% loss of wage-earning capacity. In so doing, the Board panel — citing claimant's educational background and his various certifications in jewelry making — agreed that claimant was capable of performing sedentary work. Following mandatory full Board review, the Board upheld the modification to the WCLJ's decision, finding that claimant had sustained a 55% loss of wage-earning capacity. This appeal by claimant ensued.
We affirm. Preliminarily, we reject claimant's assertion that the Board failed to adequately explain the basis for its decision. The Board summarized the testimony offered by the various medical professionals, set forth the statutory and decisional law applicable to determining claimant's loss of wage-earning capacity and analyzed the relevant factors as applied to claimant's particular situation. The mere fact that the Board concluded that a reduction in claimant's loss of wage-earning capacity was warranted does not render its decision inadequate, nor did the Board's decision deprive claimant of due process.
Turning to the merits, "where, as here, a claimant sustains a permanent partial disability that is not amenable to a schedule award, the Board must determine the claimant's loss of wage-earning capacity in order to fix the duration of benefits" (Matter of Varrone v Coastal Envt. Group, 166 AD3d 1269, 1270 [2018] [internal quotation marks and citations omitted], lv denied 32 NY3d 917 [2019]; see Matter of Lesane v City of New York Police Dept., 153 AD3d 1112, 1113 [2017]; Matter of Smith v New York City Hous. Auth., 147 AD3d 1184, 1185 [2017]). In so doing, "the Board must consider several factors, including the nature and degree of the work-related permanent impairment and the claimant's functional capabilities and vocational issues, such as the claimant's education, training, skills, age and proficiency in the English language" (Matter of Lesane v City of New York Police Dept., 153 AD3d at 1113; see Matter of Varrone v Coastal Envt. Group, 166 AD3d at 1270; Matter of Burgos v Citywide Cent. Ins. Program, 148 AD3d 1493, 1495 [2017], affd 30 NY3d 990 [2017]; New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity § 9.3, at 47-49 [2012]). Notably, we accord "great deference" to the Board's resolution of conflicting medical opinions, and the Board is free to "accept or reject portions of a medical expert's opinion" (Matter of Lesane v City of New York Police Dept., 153 AD3d at 1113 [internal quotation marks and citations omitted]; see Matter of Saintval v AMN Healthcare, 165 AD3d 1364, 1367 [2018]).
The physician who performed an independent medical examination of claimant testified that he found no objective medical evidence of any pulmonary disease, and even claimant's treating physician, Eckardt Johanning, acknowledged that any respiratory issues that claimant had were controlled with medication and seemed to be improving. As a result, according to Johanning, claimant's primary disabling condition was his fibromyalgia, which resulted in, among other things, "severe joint aches and muscle aches" and an "antalgic gait." In this regard, although claimant's rheumatologist, Bruce Solitar, testified that claimant could not work in any capacity because the chronic pain from his fibromyalgia made it impossible for claimant to concentrate, Solitar acknowledged that "pretty much all fibromyalgia evaluations are subjective" because there is no objective medical test for the condition. Johanning similarly testified that claimant could not work due to "problems with ambulation" and rated claimant's exertional ability as "less than sedentary work," but claimant's pain management specialist rated claimant as capable of performing sedentary work.
As for claimant's functional and vocational capabilities, although claimant reported that he no longer drove a vehicle, was incapable of performing even his "most basic" daily tasks and rarely left his home, Solitar testified that claimant could drive occasionally and sometimes came to his appointments unaccompanied. Solitar further believed that claimant was independent in terms of his activities of daily living. Johanning offered similar testimony, noting that claimant could perform his activities of daily living and, despite difficulties ambulating, typically arrived at his appointments without either the cane or walker that had been prescribed for him and did not require assistance either disrobing or getting on or off of the examination table. Additionally, as noted by the Board, claimant was 49 years old at the time of classification, had a college education and various certifications in jewelry making, was previously employed as a technical assistant and adjunct faculty for the employer, possessed basic computer skills and could speak, read and write in the English language. Under these circumstances, and granting due deference to the Board's resolution of credibility issues and its evaluation of the relevant medical evidence, substantial evidence supports the establishment of a 55% loss of wage-earning capacity (see Matter of Lesane v City of New York Police Dept., 153 AD3d at 1113; see generally Matter of Smith v New York City Hous. Auth., 147 AD3d 1184, 1185-1186 [2017]). Claimant's remaining arguments, to the extent not specifically addressed, have been examined and found to be lacking in merit.
Lynch, J.P., Clark, Mulvey and Devine, JJ., concur.
ORDERED that the decision is affirmed, without costs.