Matter of Conliffe v Darden Rest. (2020 NY Slip Op 06001)





Matter of Conliffe v Darden Rest.


2020 NY Slip Op 06001


Decided on October 22, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: October 22, 2020

530554

[*1]In the Matter of the Claim of Kathryn J. Conliffe, Appellant,
v
Darden Restaurant et al., Respondents. Workers' Compensation Board, Respondent.

Calendar Date: September 10, 2020

Before: Garry, P.J., Lynch, Clark, Aarons and Reynolds Fitzgerald, JJ.


Dolce Panepinto PC, Buffalo (Holly L. Schoenborn of counsel), for appellant.
Williams & Williams, Buffalo (Jared L. Garlipp of counsel), for Darden Restaurant and another, respondents.



Garry, P.J.
Appeal from a decision of the Workers' Compensation Board, filed June 10, 2019, which ruled, among other things, that claimant violated Workers' Compensation Law § 114-a and imposed penalties.
In March 2017, claimant was working as a bartender at the employer's restaurant when she stood up quickly from a crouched position and struck her head on a refrigerator door. She sought medical treatment and was diagnosed with a concussion, and later stopped working for the employer in April 2017. Her treating orthopedist found that she was temporarily totally disabled and removed her from work. In May 2017, she filed a claim for workers' compensation benefits.
Claimant continued to receive medical treatment thereafter and remained out of work. She briefly returned to work in October 2017, but experienced worsening symptoms and again stopped working. Following a January 2018 hearing before a Workers' Compensation Law Judge (hereinafter WCLJ), her claim was established for injuries to her head and neck, as well as for headaches, and she was awarded temporary partial and total disability benefits for various time periods. The claim was subsequently amended to include consequential anxiety, and awards were continued at the temporary total disability rate.
In June 2018, claimant underwent a medical examination by a physician retained by the employer and its workers' compensation carrier (hereinafter collectively referred to as the carrier), who concluded that she suffered from anxiety and postconcussion syndrome, could work with light-duty restrictions and had a 50% moderate partial disability. Claimant's treating orthopedist concurred with the light-duty restrictions recommended by this physician and opined that she had a 75% temporary impairment. At the August 2018 hearing that followed, the WCLJ updated awards and continued the case to consider the issue of permanency.
Thereafter, claimant's treating orthopedist found that claimant had recovered from her concussion, but was still disabled by anxiety, and again concluded that she had a 75% temporary impairment. He further noted that claimant was working part time. At the October 2018 hearing, claimant indicated that the only income that she received was from her part-time work for the employer. The carrier, in turn, raised the issue of claimant's violation of Workers' Compensation Law § 114-a based upon a social media investigation disclosing that claimant was selling clothing for LuLaRoe on Facebook while she was receiving benefits.
At a November 2018 hearing, claimant testified that she was an independent consultant for LuLaRoe and sold its clothing through Facebook. She further stated that she also made other items that she sold through an online shop. After hearing oral arguments and reviewing the parties' written submissions, the WCLJ issued a decision finding, among other things, that there was no violation of Workers' Compensation Law § 114-a. The carrier sought review of this decision by the Workers' Compensation Board. The Board modified the WCLJ's decision by finding that claimant violated Workers' Compensation Law § 114-a and imposed a mandatory penalty rescinding benefits from April 27, 2017 to October 18, 2018, as well as a discretionary penalty of permanent disqualification. Claimant appeals.
Workers' Compensation Law § 114-a (1) provides, in pertinent part, that "[i]f for the purpose of obtaining compensation . . . or for the purpose of influencing any determination regarding any such payment, a claimant knowingly makes a false statement or representation as to a material fact, such person shall be disqualified from receiving any compensation directly attributable to such false statement or representation." "A fact is considered material when it is significant or essential to the issue or matter at hand" (Matter of Teabout v Albany County Sheriff's Dept., 182 AD3d 709, 709 [2020] [citations omitted]; see Matter of Angora v Wegman's Food Mkts., Inc., 171 AD3d 1419, 1420 [2019]). Moreover, "'an omission of material information may constitute a knowing false statement or misrepresentation'" (Matter of Angora v Wegman's Food Mkts., Inc., 171 AD3d at 1420, quoting Matter of Kodra v Mondelez Intl., Inc., 145 AD3d 1131, 1133 [2016]). The Board's determination as to whether a claimant has made a false statement in violation of Workers' Compensation Law § 114-a will be upheld if supported by substantial evidence (see Matter of Teabout v Albany County Sheriff's Dept., 182 AD3d at 709; Matter of Swiech v City of Lackawanna, 174 AD3d 1001, 1002 [2019]).
Claimant testified that she became an independent consultant for LuLaRoe in January 2017 while working for the employer. After purchasing clothing directly from LuLaRoe, she sold the clothing on a Facebook page that she created in March 2017. Claimant indicated that, about a week after her injury, but while she still was working for the employer, she held a LuLaRoe sale through Facebook and invited many people, including coworkers. Later, in April 2017, while still working for the employer, she held a LuLaRoe open house. She stated that her husband assisted her, including shipping purchased items and posting to the Facebook page. Documents produced at the hearing indicated that claimant had purchased more than $17,000 in merchandise from LuLaRoe from January 2017 through July 2018. However, claimant explained that she had not received positive revenues from her sales, despite her intentions to make a profit. She also expressed that, following her injury, she feared becoming "inactive" with LuLaRoe if she did not meet certain quotas.
Claimant also testified that, beginning in 2014, she made and sold craft-type items on an online shop, and had even sold some of these items to the employer's general manager, but she had not received positive revenues. Claimant explained that she did not consider either of these activities to constitute work because she did not make a profit. She admitted that, although she did not disclose this information during her medical examinations or in her workers' compensation claim, she did not intend to hide the activities from the carrier.
"Although claimant testified as to her reasons for such omission[s], her testimony presented a credibility issue to be resolved by the Board" (Matter of Jordan v Saratoga County Pub. Health Nurses, 45 AD3d 1074, 1075 [2007] [internal quotation marks and citations omitted]; see Matter of Husak v New York City Tr. Auth., 40 AD3d 1249, 1250 [2007]). "The fact that claimant had not yet realized a profit from [the activities] does not diminish [her] obligation to provide true and accurate information regarding [her] employment activities and such misrepresentations are clearly material to [her] claim" (Matter of Clarke v Lomasney Combustion, Inc., 26 AD3d 604, 605 [2006] [citation omitted]). The evidence here revealed that claimant failed to accurately disclose her level of activity (see Matter of Bottieri v New York State Dept. of Taxation & Fin., 27 AD3d 1035, 1037 [2006]). Accordingly, substantial evidence supports the Board's determination that claimant violated Workers' Compensation Law § 114-a (a) by failing to disclose these activities in applying for workers' compensation benefits (see Matter of Angora v Wegman's Food Mkts., Inc., 171 AD3d at 1421; Matter of Cartuccio v New York State Dept. of Corr., 107 AD3d 1224, 1225 [2013]).
We next review the Board's determination to permanently disqualify claimant from receiving any future wage replacement benefits. Such a penalty is discretionary, but it may not be disproportionate to the underlying misconduct; where it has been applied, "the underlying deception has been deemed egregious or severe, or there was a lack of mitigating circumstances" (Matter of Kodra v Mondelez Intl., Inc., 145 AD3d at 1133-1134 [internal quotation marks and citation omitted]; see Matter of Harabedian v New York Hosp. Med. Ctr., 35 AD3d 915, 916 [2006]). We note that claimant was readily forthcoming about her activities when questioned and declined to cash benefits checks after she resumed part-time work with the employer (compare Matter of Vazquez v Skuffy Auto Body Shop, 168 AD3d 1240, 1242 [2019]). Based on all the circumstances presented, we do not find adequate support for the Board's determination that claimant engaged in "an egregious pattern of conduct," thus warranting permanent disqualification from future wage replacement benefits (see Matter of Kodra v Mondelez Intl., Inc., 145 AD3d at 1134; compare Matter of Vazquez v Skuffy Auto Body Shop, 168 AD3d at 1242; Matter of Retz v Surpass Chem. Co., Inc., 39 AD3d 1037, 1038-1039 [2007]). As such, we reverse as to the imposition of this penalty.
Lynch, Clark, Aarons and Reynolds Fitzgerald, JJ., concur.
ORDERED that the decision is modified, without costs, by reversing so much thereof as disqualified claimant from receiving all future wage replacement benefits, and, as so modified, affirmed.