Matter of Peck v The Donaldson Org. (2021 NY Slip Op 00608)





Matter of Peck v The Donaldson Org.


2021 NY Slip Op 00608


Decided on February 4, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 4, 2021

530739

[*1]In the Matter of the Claim of Harry Peck, Appellant,
v
The Donaldson Organization, Doing Business as Donaldson Interiors, et al., Respondents. Workers' Compensation Board, Respondent.

Calendar Date: January 6, 2021

Before: Egan Jr., J.P., Aarons, Pritzker, Reynolds Fitzgerald and Colangelo, JJ.


Law Offices of Michael D. Uysal, PLLC, New York City (Michael D. Uysal of counsel), for appellant.
Segal McCambridge Singer & Mahoney, New York City (Thomas W. Park of counsel), for The Donaldson Organization and another, respondents.



Colangelo, J.
Appeal from a decision of the Workers' Compensation Board, filed June 17, 2019, which ruled, among other things, that claimant violated Workers' Compensation Law § 114-a and imposed penalties.
In 2013, claimant injured his lower back while working as a carpenter and he filed a claim for workers' compensation benefits. His claim was established for a work-related back injury. In 2015, he underwent spinal fusion surgery and was subsequently deemed medically unable to return to work. Thereafter, claimant continued to receive treatment for chronic pain and was prescribed opiate medications. In January 2018, a Workers' Compensation Law Judge (hereinafter WCLJ) found that claimant had not yet reached maximum medical improvement and proceedings were continued to consider claimant's request for a spinal cord simulator trial. In November 2018, the WCLJ gave authorization and the employer's workers' compensation carrier raised the issue of claimant's violation of Workers' Compensation Law § 114-a, citing video surveillance footage showing claimant engaged in activities that were inconsistent with his claimed disability. During the hearing that followed, testimony was taken from claimant as well as the carrier's investigator, and the surveillance videotapes were submitted for the WCLJ's review. At the conclusion of the hearing, the WCLJ found that claimant did not misrepresent the extent of his disability in violation of Workers' Compensation Law § 114-a. The carrier appealed this decision to the Workers' Compensation Board. A panel of the Board, however, concluded that claimant did violate Workers' Compensation Law § 114-a and imposed a mandatory penalty as well as a discretionary penalty permanently disqualifying claimant from receiving future wage replacement benefits. Claimant appeals.
Initially, "Workers' Compensation Law § 114-a (1) provides that a claimant who, for the purpose of obtaining disability compensation, or to influence any determination related to the payment thereof, 'knowingly makes a false statement or representation as to a material fact . . . shall be disqualified from receiving any compensation directly attributable to such false statement or representation'" (Matter of Sidiropoulos v Nassau Intercounty Express, 178 AD3d 1266, 1267 [2019], quoting Matter of Galeano v International Shoppes, 171 AD3d 1416, 1417-1418 [2019]; see Matter of Angora v Wegman's Food Mkts., Inc., 171 AD3d 1419, 1420 [2019]). "[A] fact is material . . . so long as it is significant or essential to the issue or matter at hand" (Matter of Ledney v Boat-N-RV Warehouse, 174 AD3d 1245, 1246 [2019] [internal quotation marks and citations omitted]; see Matter of Galeano v International Shoppes, 171 AD3d at 1418). Notably, feigning the extent of a disability or exaggerating symptoms and/or injuries have been found to constitute material false representations within the meaning of the statute (see Matter of Rosario v Consolidated Edison Co. of N.Y., Inc., [*2]174 AD3d 1186, 1187 [2019]; Matter of Swiech v City of Lackawanna, 174 AD3d 1001, 1003-1004 [2019]). "Importantly, whether a claimant has violated Workers' Compensation Law §
114-a is within the province of the Board, which is the sole arbiter of witness credibility, and its decision will not be disturbed if supported by substantial evidence" (Matter of Sidiropoulos v Nassau Intercounty Express, 178 AD3d at 1267 [internal quotation marks, brackets and citations omitted]; see Matter of Ledney v Boat-N-RV Warehouse, 174 AD3d at 1246).
As is pertinent here, the carrier submitted surveillance videotapes, taken at different times during 2018, depicting claimant engaged in various activities that he was allegedly incapable of performing due to his disability. These included, among other things, a shopping excursion during which claimant was filmed pushing a loaded grocery cart, kneeling down, bending over and reaching overhead to retrieve items from store shelves, using a self-checkout kiosk, loading grocery bags into his car and returning the cart to the cart corral. In addition, he was observed shoveling snow and reaching overhead with a snow rake to remove snow from the roof of his house. Claimant was also observed performing a variety of physical tasks in connection with the construction of a shed on his property. These included, among other things, carrying lumber and a ladder, using a screw gun, hammering nails, standing on a ladder and on scaffolding, installing roof flashing, moving construction materials, climbing up and down a ladder and walking on a roof with a leaf blower. The investigative reports and testimony of the investigator who prepared them confirmed the activities depicted on the videotapes.
During his testimony, claimant admitted that he engaged in the activities shown on the videotapes. With regard to the construction of the shed, he explained that he had help from others and worked on it for brief periods of 15 minutes to a half an hour at a time over the course of a three-month period. He stated that he climbed up and down the ladder and also climbed onto the roof, but carried only four or five shingles at one time. He admitted that he also performed normal maintenance around the house, including mowing the lawn, and stated that he could operate a chain saw for 15 to 20 minutes. He explained that he was able to perform this physical labor because he was taking pain medications and indicated that his doctors encouraged him to do the physical activities that he could tolerate.
The Board concluded that the above activities were inconsistent with the manner in which claimant portrayed himself to the physicians who had examined him because he presented as someone with significant functional limitations requiring the use of a cane. Although there was no medical testimony presented, the medical reports and related documentation substantiate the Board's conclusion. In the July 2016 independent medical examination report [*3]prepared by orthopedist Thomas DiBenedetto, who evaluated claimant for the purpose of classifying his lumbar injury, he noted that claimant walked with a limp and used a cane, and that he complained of continuing back pain with tingling in his left leg, which prevented him from walking for more than 10 minutes. Likewise, in the July 2016 C-4 report prepared by Paul Brission, claimant's treating orthopedist, he noted that claimant walked with a limp and relied on a cane, and indicated that claimant complained of pain upon bending forward. In addition, in multiple reports prepared by Alexander Weingarten, a pain management specialist who treated claimant in January 2017 through, as is relevant here, the end of 2018, he noted that claimant complained of low back pain radiating down to both lower extremities and used a cane for ambulation. He further noted that claimant could not return to work because he was "unable to lift, push or pull."
In the March and April 2017 reports prepared by Brisson during follow-up visits, he noted that claimant complained of severe pain in his lower left extremity with numbness, tingling and loss of balance, and that he ambulated with a cane. Furthermore, in the September 2018 independent medical examination report prepared by Mikhall Artamonov, a specialist in physical medicine and rehabilitation who evaluated claimant's need for a spinal cord simulator trial, he noted that claimant's major complaint was pain radiating to his bilateral lower extremities, which was worse on the left, and that claimant preferred to stand during the examination using a cane for support. He observed that claimant's "[g]ait and transfers were wide-based and antalgic" and that he "expressed visibly exaggerated pain behavior including both verbal and nonverbal signals such as face grimacing."
In view of foregoing, it is apparent that claimant overstated the extent of his disability when interacting with physicians for the purpose of influencing his workers' compensation claim. Significantly, the videotapes do not show that claimant walked with a limp or that he required the use of a cane. Although claimant disclosed to Brisson and Weingarten that he engaged in limited activities and indicated that he tried to remain active, the types of activities that he was filmed performing were much more extensive and strenuous than those he should have been able to perform given his reported limitations. Notably, his attempt to downplay the extent of his activities in constructing the shed is at odds with the content of the surveillance videotapes. Accordingly, the Board's finding that claimant made a willful misrepresentation in violation of Workers' Compensation Law § 114-a (1) is supported by substantial evidence and will not be disturbed (see Matter of Swiech v City of Lackawana, 174 AD3d at 1003-1004; Matter of Ledney v Boat-N-RV Warehouse, 174 AD3d at 1246; Matter of Poupore v Clinton County Highway Dept., 138 AD3d at 1323-1324; Matter [*4]of Retz v Surpass Chemical Co., 39 AD3d 1037, 1038-1039 [2007]).
Likewise, we uphold the Board's disqualification of claimant from receiving future wage replacement benefits. Although such penalty is discretionary, "it may not be disproportionate to the underlying misconduct; where it has been applied, 'the underlying deception has been deemed egregious or severe, or there was a lack of mitigating circumstances'" (Matter of Conliffe v Darden Restaurant, 187 AD3d 1398, 1401 [2020], quoting Matter of Kodra v Mondelez Intl. Inc., 145 AD3d 1131, 1133-1134 [2016]). The Board explained the basis for imposing such penalty as it found that the activities captured on the surveillance videotapes showed that claimant's misrepresentation of the level of his disability was so egregious and severe as to warrant disqualification. Inasmuch as the record supports the Board's finding, we cannot conclude that the penalty is disproportionate to claimant's material misrepresentations (see Matter of Swiech v City of Lackawanna, 174 AD3d at 1004; Matter of Poupore v Clinton County Highway Dept., 138 AD3d at 1324).
Egan Jr., J.P., Aarons, Pritzker and Reynolds Fitzgerald, JJ., concur.
ORDERED that the decision is affirmed, without costs.