Matter of Dunleavy v Federated Fire Protection (Turner Constr.) (2021 NY Slip Op 01464)





Matter of Dunleavy v Federated Fire Protection (Turner Constr.)


2021 NY Slip Op 01464


Decided on March 11, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 11, 2021

531679

[*1]In the Matter of the Claim of Brian Dunleavy, Respondent,
v
Federated Fire Protection (Turner Construction) et al., Appellants. Workers' Compensation Board, Respondent.

Calendar Date: February 8, 2021

Before: Egan Jr., J.P., Clark, Aarons, Pritzker and Colangelo, JJ.


Goldberg Segalla, LLP, Syracuse (Cory A. DeCresenza of counsel), for appellants.
Letitia James, Attorney General, New York City (Alison Kent-Friedman of counsel), for respondent.



Clark, J.
Appeal from a decision of the Workers' Compensation Board, filed September 17, 2019, which ruled, among other things, that claimant violated Workers' Compensation Law § 114-a and imposed a penalty.
Claimant, a steamfitter, filed a claim for workers' compensation benefits in August 2013, contending that he had sustained an occupational/repetitive stress injury to his neck over the course of his 30 years of installing sprinkler systems. While undergoing an independent medical examination performed by Robert Elkins in April 2015, claimant indicated — in response to a questionnaire — that he had neither worked in any capacity nor engaged in physical activity of any type outside of his home since 2013, asserting that his pain resulted in a "[t]otal interference" with his recreational activities and hobbies. Claimant's written responses mirrored his subsequent hearing testimony, wherein he stated that he had "zero range of motion" in his neck and was unable to work at all. Based upon this proof, a Workers' Compensation Law Judge (hereinafter WCLJ) established the claim in June 2015 and set the date of disablement as February 12, 2013.
In July 2016, claimant's treating physician, Robert Hecht, concluded that claimant had sustained a permanent injury to his cervical spine, had reached maximum medical improvement and was capable of performing only less than sedentary work. Thereafter, in June 2017, claimant completed a loss of wage-earning capacity vocational data form, wherein he listed pipefitter and steamfitter as his only job titles for the preceding 10 years. Depositions of Hecht and Elkins ensued, and the employer's workers' compensation carrier, citing a surveillance video of claimant, raised the issue of a possible Workers' Compensation Law § 114-a violation.
During the ensuing hearing, claimant acknowledged that, in addition to his primary occupation as a steamfitter, he also was a member of a fire department until 2012 — ultimately attaining the rank of Fire Chief. As to his physical activities, claimant testified that, following surgery to his neck in 2013, he "tried to swing a golf club" but was "[n]ot really" successful, that he would only "try to play" golf if he was "hav[ing] a good day" and that, when he did play, he did not "play all 18 holes" and would "have to take a break." Claimant further testified that he did not perform any chores or upkeep at his Florida residence, that he did not do "too much" work at his father's home on Fire Island, where claimant would stay in the summer, and that he could not recall an instance where he had occasion to use a weedwhacker or a Sawzall. The surveillance video obtained by the carrier's investigator in the summer of 2017, however, showed claimant playing 18 holes of golf and using the aforementioned power tools to perform landscaping around the Fire Island residence. According to the investigator's notes, claimant was observed "dragging large [tree] limbs along the ground" and engaging [*2]in various golf-related activities, such as shouldering his golf bag, bending and squatting.
Following receipt of the investigator's testimony and the surveillance video, a WCLJ directed Hecht and Elkins to prepare addenda to their previous reports. No response was received from Hecht, and Elkins, although acknowledging that claimant appeared to have "underestimated his own activities compared to his actual capabilities," found no change in claimant's impairment. Based upon the video, Elkins opined that claimant was capable of light-duty work.
Ultimately, the WCLJ found, among other things, that claimant had sustained a permanent partial disability and suffered a 65% loss of wage-earning capacity; however, as claimant was not attached to the labor market, he was not entitled to an award at that time. Additionally, the WCLJ agreed that claimant violated Workers' Compensation Law § 114-a and disqualified claimant from receiving wage replacement benefits from April 14, 2015 (the date of the initial independent medical examination) to October 17, 2018. The WCLJ also assessed a $10,000 discretionary penalty, citing the nature and severity of claimant's misrepresentations, as well as the fact that he apparently was not actually paid benefits during the disqualification period. Upon administrative review, the Workers' Compensation Board modified the WCLJ's decision by rescinding the monetary penalty and imposing a discretionary penalty equal to the period of the mandatory penalty should claimant demonstrate his attachment to the labor market and become eligible for benefits. The Board otherwise affirmed the WCLJ's decision, prompting this appeal.
We affirm. Although the parties do not dispute that claimant violated Workers' Compensation Law § 114-a, the employer and its workers' compensation carrier (hereinafter collectively referred to as the carrier) fault the Board for failing to permanently disqualify claimant from receiving benefits. Workers' Compensation Law § 114-a (1) provides, in relevant part, that a claimant who, for the purpose of obtaining disability compensation or influencing a determination relative thereto, "knowingly makes a false statement or representation as to a material fact . . . shall be disqualified from receiving any compensation directly attributable to such false statement or representation" (see Matter of Felicello v Marlboro Cent. Sch. Dist., 178 AD3d 1252, 1253 [2019]; Matter of Smith v Rochester-Genesee Regional Transp. Auth., 174 AD3d 1264, 1267 [2019]). In addition to this mandatory penalty, the Board may — in its discretion — "disqualify a claimant from receiving future benefits or . . . impose an additional penalty up to the amount of the mandatory penalty" (Matter of Restrepo v Plaza Motors of Brooklyn Inc., 181 AD3d 1108, 1110 [2020] [internal quotation marks, brackets and citation omitted]; see Matter of Van Etten v Mohawk Val. Community Coll., 120 AD3d 1457, 1457-1458 [2014]). Permanent disqualification [*3]typically occurs where "the underlying deception has been deemed egregious or severe, or there was a lack of mitigating circumstances" (Matter of Conliffe v Darden Rest., 187 AD3d 1398, 1401 [2020] [internal quotation marks and citations omitted]; see Matter of Vazquez v Skuffy Auto Body Shop, 168 AD3d 1240, 1242 [2019]). Judicial review of the penalty imposed by the Board is limited to whether such penalty constitutes an abuse of discretion as a matter of law, i.e., whether the penalty imposed is so disproportionate to the offense as to be shocking to one's sense of fairness (see Matter of Restrepo v Plaza Motors of Brooklyn Inc., 181 AD3d at 1110).
The Board found that claimant violated Workers' Compensation Law § 114-a by misrepresenting the extent of his injury to Elkins and Hecht and by failing to disclose his activities as a firefighter. Although a review of claimant's testimony, the written questionnaires that he completed and the activities depicted on the surveillance video indeed reflect that claimant understated the extent of his recreational endeavors, we cannot say that claimant's conduct was so egregious, flagrant or pervasive as to compel the Board to permanently disqualify him from receiving benefits. As the Board's leniency in this regard does not constitute an abuse of discretion as a matter of law, the discretionary penalty imposed will not be disturbed (see Matter of Restrepo v Plaza Motors of Brooklyn Inc., 181 AD3d at 1111; Matter of Van Etten v Mohawk Val. Community Coll., 120 AD3d at 1458; compare Matter of Felicello v Marlboro Cent. Sch. Dist., 178 AD3d at 1254-1255; Matter of Vazquez v Skuffy Auto Body Shop, 168 AD3d at 1242).
The carrier next argues that consideration of the relevant factors warrants — at the very least — a significant reduction in claimant's loss of wage-earning capacity. "In situations where, as here, a claimant sustains a permanent partial disability that is not amenable to a schedule award, the Board must determine the claimant's loss of wage-earning capacity in order to fix the duration of benefits" (Matter of Varrone v Coastal Envt. Group, 166 AD3d 1269, 1270 [2018] [internal quotation marks and citations omitted], lv denied 32 NY3d 917 [2019]; accord Matter of Rapaglia v New York City Tr. Auth., 179 AD3d 1257, 1257-1258 [2020]; see Matter of Castano v Westchester Community Coll., 179 AD3d 1263, 1264 [2020], lv denied 35 NY3d 906 [2020]). "In so doing, the Board must consider several factors, including the nature and degree of the work-related permanent impairment and the claimant's functional capabilities and vocational issues, such as the claimant's education, training, skills, age and proficiency in the English language" (Matter of Castano v Westchester Community Coll., 179 AD3d at 1264 [internal quotation marks and citations omitted]; see Matter of Rapaglia v New York City Tr. Auth., 179 AD3d at 1258; Matter of Saintval v AMN Healthcare, 165 AD3d 1364, 1366 [2018]). We grant deference [*4]to the Board's resolution of credibility issues and its evaluation of the medical evidence, and its determination will be upheld if supported by substantial evidence in the record as a whole (see Matter of Castano v Westchester Community Coll., 179 AD3d at 1264-1265).
The carrier does not challenge claimant's alphanumeric classification, nor does it raise specific arguments as to the percentage loss of wage-earning capacity assessed. Rather, the carrier argues that, in light of claimant's misrepresentations regarding the nature and extent of his recreational activities, the Board's analysis of claimant's wage-earning capacity should not be given any credence. As noted by the Board, the carrier is focusing on claimant's functional limitations; however, claimant's loss of wage-earning capacity "is based on three types of input, namely, the nature and degree of the medical impairment, functional ability/loss and non-medical vocational factors" (Matter of Rapaglia v New York City Tr. Auth., 179 AD3d at 1258 [internal quotation marks, brackets and citations omitted]). Taking into account claimant's age, education, proficiency in English and limited work experience, together with his physical limitations, and granting deference to the Board's evaluation of the medical evidence, the Board's finding that claimant sustained a 65% loss of wage-earning capacity is supported by substantial evidence and will not be disturbed (see e.g. Matter of Castano v Westchester Community Coll., 179 AD3d at 1265). The carrier's remaining arguments, to the extent not specifically addressed, have been examined and found to be lacking in merit.
Egan Jr., J.P., Aarons, Pritzker and Colangelo, JJ., concur.
ORDERED that the decision is affirmed, without costs.