Matter of Strohschein v Safespan Platform Sys. Inc. (2022 NY Slip Op 04331)

Matter of Strohschein v Safespan Platform Sys. Inc.

2022 NY Slip Op 04331

Decided on July 7, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:July 7, 2022

530839
[*1]In the Matter of the Claim of Robert Strohschein, Appellant,
v
Safespan Platform Systems Inc. et al., Respondents, Workers' Compensation Board, Respondent.

Calendar Date:June 2, 2022

Before:Garry, P.J., Egan Jr., Lynch, Reynolds Fitzgerald and McShan, JJ.

Joel M. Gluck, New York City, for appellant.
Goldberg Segalla LLP, Buffalo (James M. Specyal of counsel), for Safespan Platform Systems Inc. and another, respondents.

Reynolds Fitzgerald, J.
Appeal from a decision of the Workers' Compensation Board, filed July 16, 2019, which ruled, among other things, that claimant violated Workers' Compensation Law § 114-a, and permanently disqualified him from receiving future wage replacement benefits.
In January 2018, claimant, an iron worker, filed a claim for workers' compensation benefits alleging that he sustained an injury to his right biceps when he jumped and reached up for a piece of steel to pull himself up from a platform underneath a bridge.[FN1] Although the employer and its workers' compensation carrier (hereinafter collectively referred to as the carrier) initially controverted the claim, following hearings and deposition testimony from claimant's treating physicians, a Workers' Compensation Law Judge (hereinafter WCLJ) ultimately established the claim for a right biceps tendon tear and set claimant's average weekly wage. The claim was subsequently amended to include consequential nerve palsy of the right upper extremity. At a January 2019 hearing, the carrier raised the issue of claimant's attachment to the labor market and disclosed that it possessed surveillance videos and photographic evidence in support of its claim that claimant had violated Workers' Compensation Law § 114-a by misrepresenting his medical condition to the carrier's consultant at a December 6, 2018 independent medical examination. Following hearings at which testimony was received regarding the alleged Workers' Compensation Law § 114-a violation and claimant's labor market attachment, the WCLJ found that claimant's testimony demonstrated an attachment to the labor market and that there was insufficient evidence that claimant had violated Workers' Compensation Law § 114-a. On administrative appeal, the Workers Compensation Board modified the decision of the WCLJ, finding that claimant had violated Workers' Compensation Law § 114-a by misrepresenting and exaggerating his complaints to physicians, and assessed the mandatory penalty of forfeiture of benefits attributable to his misrepresentations and the discretionary penalty of disqualification from receiving future wage replacement benefits. The Board also found that claimant did not demonstrate an attachment to the labor market, as claimant failed to produce sufficient evidence of a diligent, timely and persistent search for employment. Claimant appeals.
We affirm. "[A] claimant who, for the purpose of obtaining disability compensation, or to influence any determination related to the payment thereof, 'knowingly makes a false statement or representation as to a material fact shall be disqualified from receiving any compensation directly attributable to such false statement or representation'" (Matter of Galeano v International Shoppes, 171 AD3d 1416, 1417-1418 [2019] [ellipsis omitted], quoting Workers' Compensation Law § 114-a [1]; see Matter of Ringelberg v John Mills Elec., Inc., 195 AD3d 1332, 1333 [2021]; Matter of Horn v New York City Tr. Auth., 187 [*2]AD3d 1266, 1268 [2020], lv denied 36 NY3d 903 [2020]). Moreover, "an omission of material information may constitute a knowing false statement or misrepresentation" (Matter of Kodra v Mondelez Intl., Inc., 145 AD3d 1131, 1133 [2016]; see Matter of Angora v Wegmans Food Mkts., Inc., 171 AD3d 1419, 1420 [2019]). "Whether a claimant has violated Workers' Compensation Law § 114-a is within the province of the Board, which is the sole arbiter of witness credibility, and its decision will not be disturbed if supported by substantial evidence" (Matter of Barros v John P. Picone, Inc., 188 AD3d 1397, 1399 [2020] [internal quotation marks and citations omitted]).
In a December 2018 medical report, James Shortt, an orthopedic surgeon who examined claimant on behalf of the carrier, reported that claimant advised him that he uses a wrist brace and that, if he does not use the brace, his wrist goes into flexion and is more painful than normal. Claimant further advised Shortt that when he grips something, claimant finds it difficult to release his grip and that pain radiates up his arm from the dorsum of his wrist to the distal biceps. Based upon his review of claimant's medical records, his examination of claimant and claimant's statements, Shortt found that claimant would not be capable of repetitive use with his right hand or fine manipulation and that it was unlikely that claimant would ever be able to return to work as an iron worker. Shortt concluded that claimant had a 50% temporary medical impairment of a moderate degree, noting that claimant should continue to wear his wrist brace, that his grip and pinch strength on his right side was diminished as compared to his left side and that lifting and carrying should be limited to two to three pounds. Consistent with Shortt's findings, Aric Hausknecht, a physician specializing in neurology and pain management who examined claimant several times after his injury, including in September 2018, testified that claimant is required to wear a wrist splint all of the time due to the severity of his injuries, that he had not cleared claimant to drive and that claimant could not open any doors or perform any task that requires fine manipulation with his right hand. Similarly, Garrick Cox, an orthopedic surgeon who performed the March 2018 surgery on claimant, and saw claimant on, among other occasions, December 12, 2018, testified that, by December 2018, claimant's right hand was still profoundly weak and that it was very difficult for claimant to open his right hand to shake hands with somebody.
In contrast to the foregoing medical narratives and testimony, surveillance video taken on the day of Shortt's December 6, 2018 medical examination shows claimant entering the building with a brace on his right hand and using his right hand to open a car door and a building door and to hold open that building door. After the examination, claimant is observed leaving an eatery while carrying a bag of food in his right [*3]hand. Shortly thereafter, he is seen in a post office using his right hand without the brace and is later observed at home aggressively shaking out a car mat, and slapping it on the ground, using only his right hand. Claimant is also depicted on the video comfortably using and manipulating a handheld vacuum with his right hand to vacuum his car. He is later depicted lifting the top of a garbage can and moving the can using his right hand. He is seen later that day driving his car without use of the brace on his right hand and observed lifting the hood of his car and checking the oil with his right hand. Claimant also put fluid in the engine with his right hand and carried a gallon jug with his right hand. Throughout the video, claimant moved his arms freely and does not appear to be experiencing pain or any restriction and/or limitation of movement. When claimant was asked about the surveillance video from December 6, 2018 and his activity depicted on that video, claimant repeatedly testified that he could not recall his activity from that day. Given the patent inconsistencies between the medical narratives and the surveillance evidence, the foregoing demonstrates that claimant feigned the extent of his disability and/or exaggerated his symptoms and/or injury during the December 2018 independent medical examination and constitutes substantial evidence for the Board's determination that claimant knowingly made material misrepresentations in violation of Workers' Compensation Law § 114-a (see Matter of Quaranta v Special Teams, Inc., 195 AD3d 1342, 1344 [2021]; Matter of Ringelberg v John Mills Elec., Inc., 195 AD3d at 1334-1335; Matter of Ordaz v Jerrick Assoc., Inc., 194 AD3d 1331, 1333 [2021]).
With regard to claimant's challenge to the Board's imposition of the discretionary penalty, "judicial review of an administrative penalty is limited to whether the penalty constitutes an abuse of discretion as a matter of law and, as such, a penalty must be upheld unless it is so disproportionate to the offense as to be shocking to one's sense of fairness, thus constituting an abuse of discretion as a matter of law" (Matter of Barros v John P. Picone, Inc., 188 AD3d at 1400 [internal quotation marks, brackets, ellipses and citations omitted]; accord Matter of Lopez v Clean Air Quality Servs. Inc., 198 AD3d 1038, 1039 [2021]; see Matter of Dunleavy v Federated Fire Protection [Turner Constr.], 192 AD3d 1303, 1306 [2021]). The Board explained that claimant misrepresented and exaggerated his physical limitations to his doctors and that claimant's deception was severe enough to warrant permanent disqualification from receiving any future wage replacement benefits. As the Board sufficiently set forth its reasons for finding egregious conduct, we find no abuse of the Board's discretion in permanently disqualifying claimant from future indemnity benefits (see Matter of Williams v New York City Dept. of Corr., 188 AD3d 1382, 1383-1384 [2020]; Matter of [*4]Adams v Blackhorse Carriers, Inc., 142 AD3d 1273, 1275 [2016]; Matter of Siddon v Advance Energy Tech., 98 AD3d 1202, 1203 [2012]; Matter of Poli v Taconic Correctional Facility, 83 AD3d 1339, 1340 [2011]). To the extent that we have not addressed any of claimant's remaining contentions, including his challenge to the Board's finding that he failed to demonstrate labor market attachment,[FN2] such contentions are either academic in light of our decision or have been considered and found to be without merit.
Garry, P.J., Egan Jr., Lynch and McShan, JJ., concur.
ORDERED that the decision is affirmed, with costs.

Footnotes

Footnote 1: On March 28, 2018, claimant underwent a surgical procedure in the form of a right distal biceps tendon repair.

Footnote 2: Although the Board did not articulate a specific date subsequent to which claimant failed to demonstrate labor market attachment, we remind the Board that the appropriate date of such a finding "'is not the date [that] the issue is raised [by the carrier], but rather the date that evidence showing a lack of labor market attachment is submitted'" (Matter of Blanch v Delta Air Lines, 204 AD3d 1203, 1207 [2022], quoting Matter of Bruno v World Trade Ctr. Volunteer Fund, 184 AD3d 929, 931 [2020]). Here, February 21, 2019 was the hearing date on which evidence showing a lack of labor market attachment was submitted. Inasmuch as the applicable date for the Board's finding of no labor market attachment (February 21, 2019) comes after the date on which claimant was permanently disqualified from receiving wage-replacement benefits (December 6, 2018), claimant's challenge to the Board's finding that he failed to demonstrate labor market attachment is academic (cf. Matter of Dunleavy v Federated Fire Protection [Turner Constr.], 192 AD3d at 1307).